UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| CHARMINE WADE | * | CIVIL ACTION NO.  14-2388 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| THE HOME DEPOT USA, INC. AKA THE HOME DEPOT | * | MAG. JUDGE KAREN L. HAYES |

RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 18] filed by Defendant The Home Depot U.S.A., Inc. ("Home Depot").  Home Depot moves for summary judgment on Plaintiff Charmine Wade's ("Wade") race discrimination and harassment, age discrimination, and retaliation claims.  Wade opposes summary judgment.

For the following reasons, Home Depot's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

I.    FACTS

Wade is employed by Home Depot as a cashier.  She began her employment with Home Depot in 1998.  Home Depot contends that she resigned in 2003, while Wade characterizes this time as a "break" from Home Depot.[1]  Regardless, in 2004, she returned to work for Home Depot as a part-time employee.  Since that time, she has vacillated between part-time and full-time employment at her own request.  When other employees have asked, she has given them her scheduled hours in order to help them out.

---

[1]Wade disputes Home Depot's factual statement that she resigned at her husband's request, but she testified in her deposition that she left before her fifth year of employment because "my husband didn't want me to work." [Doc. No. 18-3, Wade Depo., p. 31].

Between January 9, 2013, and April 2013, Wade alleges that Home Depot denied her a promotion to head cashier because of her race, African-American.  During that time, three positions became available for head cashier.  One of the positions was available only to external candidates.  That position was awarded to DeShannon Ausberry ("Ausberry"), who is African-American.  She began her employment on March 2, 2013.

However, there were two other head cashier positions that were created under the requisition number 101466084.  On March 20, 2013, these two positions were listed on Home Depot's intranet site, CareerDepot, a site current employees use to apply for available positions.

Wade was aware that Home Depot has a "Staffing Selection Policy" and that, under that policy, she must express interest in a position through CareerDepot.  Wade did not apply for the head cashier positions listed on March 20, 2013, through CareerDepot.  She also failed to express interest in the position directly to the Store Manager Jeff Woods ("Woods"), as is also required by the policy.

However, Wade contends that she did not apply for the positions because she was misled. First, she contends that job notices are usually posted in the breakroom,[2] but these two head cashier openings were not posted there.  Wade was aware that a head cashier had left her employment at the Monroe store, so she asked the Assistant Store Manager Ronnie Lebeouf ("Lebeouf") ,who is Caucasian, whether a full-time head cashier position would be available. According to Wade, he laughed and said he would have to ask Woods, but that he did not know if Woods would make a "full-timer" a head cashier.  Approximately one week later, Wade asked Lebeouf if he found out from Woods if the head cashier position was going to be full time.  He

---

[2]Wade does not appear to contend that the Staffing Selection Policy requires that available positions be posted in the break room, but instead contends that was the usual procedure at the Monroe store.

allegedly told her that Woods was going to place two part-time employees in the position, rather than a full-time employee.   Therefore, Wade did not look at CareerDepot.

Another employee, Olivia Pescatore ("Pescatore"), a Caucasion, had allegedly asked Lebeouf if there was going to be a part-time head cashier position.  She and Lebeouf both aver that Lebeouf told her that there would be a full-time head cashier position and that she should apply online if she was interested.

Three employees applied for the two head cashier positions: Pescatore and Twyla Earl ("Earl") and Crystal Alexander, both of whom are African-American.  These three employees were interviewed, and Earl and Pescatore were selected for the positions.  Earl began working as a head cashier on April 22, 2013, and Pescatore began working as a head cashier on June 12, 2013.  Wade has more seniority with Home Depot and more years of experience as a cashier than Pescatore, who was working as a part-time employee at the time of her selection for the head cashier position.

In April, 2013, Wade spoke with the secretary for District Manager Calvin Martin, who is African-American.  She complained that Lebeouf told the "white woman [Pescatore] to go online and put in" for the head cashier position. [Doc. No. 18-3, Wade Depo., p. 116].

On September 24, 2013, Wade filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging in pertinent part:

> I was hired on September 13, 1998 by . . . Home Depot . . . as a Cashier.  From January 9, 2013 through April 2013, I was subjected to denial of applying for a promotional opportunity by Jeff Woods, Store Manager.  Additionally, I was treated different [sic] than others regarding existing company policies. . . .
>
> No reason was given for the actions taken against me.
>
> I believe that I have been discriminated against because of my race, Black, and retaliation [sic] for opposing practices made unlawful under Title VII of the Civil

3

Rights Act of 1964, as amended.

[Doc. No. 1, EEOC Charge].

Since the filling of the three identified positions, Home Depot has promoted two more African-American employees to head cashier.  Wade claims that it did so because of her complaint.

Wade remains employed by Home Depot as a cashier and recently used CareerDepot to apply for a head cashier position that was open on the date of her September 9, 2015 deposition.

On April 29, 2014, the EEOC closed its investigation and issued a notice of right to sue letter to Wade.

On July 28, 2014, Wade filed a Complaint in this Court against Home Depot alleging race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626, *et seq.*  She further asserted claims of hostile work environment and retaliation.

On October 9, 2015, Home Depot filed the instant Motion for Summary Judgment, moving for dismissal of all Wade's claims. [Doc. No. 18].  Wade filed an Opposition and Memorandum to the Motion for Summary Judgment [Doc. No. 23] on November 20, 2015. Finally, on December 8, 2015, Home Depot filed a Reply Brief in Support of Motion for Summary Judgment [Doc. No. 26].

The Court is now prepared to rule.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary

4

judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

**B.    Race Discrimination**

Wade alleges that Home Depot discriminated against her on the basis of race by failing to

5

promote her to head cashier.  Home Depot denies this allegation, asserting that Wade did not apply for the positions and that she has no evidence that its promotion decisions were based on race.  Additionally, Wade contends that she and "other African-American cashiers have been subjected to discrimination relating to privileges, discipline, firing and awards." [Doc. No. 23, p. 1].

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).  Terms and conditions of employment include the opportunity to obtain promotions.  *See Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000).

When there is no direct evidence of race discrimination, as in this case, the Court applies the burden shifting test established by *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04 (1973).  Under this test, if Wade establishes a *prima facie* case of discrimination, the burden shifts to Home Depot to articulate a legitimate, non-discriminatory reason for the adverse action against her.  *Id.*  If Home Depot satisfies this burden of production, the burden shifts back to Wade, who must "offer sufficient evidence to create a genuine issue of material fact "either (1) that [Home Depot's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [Home Depot's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Wade's] protected characteristic (mixed-motive[s] alternative)."  *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (citing same in the context of a Title VII race discrimination case).

### 1.     Failure to Promote

In the context of a failure to promote, a plaintiff can establish a *prima facie* case by

showing "that (1) [s]he was not promoted, (2) [s]he was qualified for the position [s]he sought; (3) [s]he fell within a protected class at the time of the failure to promote; and (4) the defendant[-employer] either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of h[er] race." *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013) (citing *Price v. Fed. Express Corp*., 283 F.3d 715, 720 (5th Cir. 2002)).

It is undisputed that Wade falls within a protected class as an African-American employee, that she was not promoted to head cashier, that she had the experience to be a head cashier, and that one head cashier position was awarded to Pescatore, a Caucasion.  However, Home Depot argues that Wade cannot make out the second element of her *prima facie* case because she failed to apply for the position using the intranet site available for current employees, and she did not express interest in the position the store manager, Woods.

Wade argues in response that she did not apply because Home Depot misled her about the availability of a full-time position.  First, notice of the head cashier position was not posted in the breakroom, which, according to Wade, was the usual practice at the Monroe store.  Second, Wade testifies that Lebeouf actively misled her.  According to Wade, she knew that a head cashier had left her employment with Home Depot, so she asked Lebeouf if a head cashier position was available and whether it would be staffed as a full-time position or with part-time employees.  He allegedly laughed and said he would to have to ask Woods, but that he did not know "if [Woods] was going to make a full-timer head cashier." [Doc. No. 18-3, p. 74].[3]  She

---

[3]In support of her opposition memorandum, Wade submitted her own affidavit and affidavits from Home Depot employees Pescatore, Terrinesh Burns, Sylvia Mitchell, Yolanda Anders, and Shirley Savage.  Home Depot objected to the Court's consideration of these affidavits on grounds of hearsay, that they contained inadmissible speculation, and that the

claims that a week later she again asked Lebeouf about the position, and he confirmed that the head cashier position would be staffed with part-time employees, not a full-time employee. Based on his response and the lack of notice in the break room, Wade did not apply for the position on CareerDepot.

Under these alleged facts, Wade has established a *prima facie* case for purposes of summary judgment.  The Court disagrees with Home Depot that, under these alleged circumstances, Wade was required to apply through Career Depot.  Although Home Depot did have a formal application process and Wade failed to follow that process, viewing the evidence in the light most favorable to Wade, as the Court must, a jury could find that Lebeouf, an assistant manager, apparently involved in the interview process,[4] purposely misled her after she had inquired about the position.  Wade indeed "sought" the promotion, but Lebeouf's actions, combined with the lack of notice in the break room, denied her the opportunity to apply and interview for the position. *See Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 570 (5th Cir. 1988) ("It is not legally sufficient or legitimate for an employer to reject an employee who does not have notice or an opportunity to apply for a position."); *cf. Everett v. Miss.*, 106 Fed. App'x 264 (5th Cir. 2004) ("Our precedents have not addressed the question whether an employee who is aware

_____

declarants lacked personal knowledge to support some of the statements.  The Court has not considered or relied on the averments of Burns, Anders, and Savage or the hearsay contained in Wade's affidavit.  However, the Court did consider Pescatore's averments regarding her application for the head cashier position and her relevant experience as compared to Wade. Finally, the Court did not consider Mitchell's averments which support Wade's testimony about her initial conversation with Lebeouf because it was unclear whether she was present during that conversation.  If Mitchell was present, she can testify at trial about this conversation because Lebeouf's statements are not hearsay and are admissible under Federal Rule of Evidence 801(d)(2).

[4]Affidavits must be based on personal knowledge, and Home Depot has provided this Court with Lebeouf's affidavit about the selection process for the two head cashier positions.

8

of a promotion opportunity, but does not find it attractive due to misinformation, may . . . avoid

the application requirement." While the Fifth Circuit was "cognizant of the logic behind

applying the exception in [such] situations," it refused to do so when the employer did not

"affirmatively conceal[] information," but the plaintiff-employee was mistaken in her belief

about the requirements of a position).

The Court is aware that this is a close call. The Fifth Circuit has not required plaintiffs to

prove that they applied for a position when the vacancy was not published or there was no formal

application process. *See Everett*, 106 Fed. App'x. at 266. On the other hand, in *Everett*, a

plaintiff who was mistaken about the geographic location of a position could not establish a

*prima facie* case when she had notice of the position and an opportunity to express interest. This

case falls in the middle–there was notice on the CareerDepot website, and Wade could have

applied there. However, unlike *Everett*, if her testimony is believed, she was not mistaken in her

belief, but was deliberately misled by Home Depot's Assistant Manager Lebeouf to prevent her

from applying. At the same time, he provided accurate information to Pescatore, the white

candidate. *See Id.* at 267 ("Everett provides no evidence, for example, that Hare or other

potential applicants were provided different, potentially more accurate information about the job

or that the Department's sole motivation for retaining the [old] PIN number [which identified it

with only a portion of the geographic territory] was to prevent only her from applying."). Thus,

the Court finds that Wade has established a *prima facie* case of race discrimination based on her

failure to promote claim.

Further, Home Depot relies only on Wade's failure to apply as its legitimate, non-

discriminatory reason for not promoting her. Home Depot posits that "Assistant Store Manager

Mr. Lebeouf and Store Manager Mr. Woods, did not and could not consider [Wade]" for the

9

position because she did not apply. [Doc. No. 18, p. 15].  If Lebeouf's own actions brought about

that failure to apply, he was aware that she sought the head cashier position, and he was involved

in the selection process, then the jury could find infer that the proffered reason was false and find

it to be pretext for discrimination.[5]  Accordingly, Home Depot's Motion for Summary Judgment

on Wade's race discrimination claim for failure to promote is DENIED.

### 2.    Other Alleged Discrimination

In addition to her claim that Home Depot discriminated against her by failing to promote

her to head cashier, Wade claims that the company has engaged in other acts of discrimination

against her and other African-American cashiers.

To the extent that Wade raises claims on behalf of others, this matter is not a class action,

and her claims are limited to Home Depot's alleged discrimination against her.  The Court cannot

consider Wade's claims of discrimination against African-American cashiers generally.

Wade also asserts that she has individually been subjected to other discriminatory acts.

However, a review of her allegations indicate that those claims are actually part of hostile work

environment and/or retaliation claims and have been addressed below.  Thus, to the extent that

Home Depot moves for summary judgment on Wade's race discrimination claims based on

actions other than the failure to promote, its motion is GRANTED, and those claims are

---

[5]Home Depot can present evidence at trial that four of the five head cashier positions
filled since 2013 are or were staffed with African-American employees.  However, it is worthy of
note that Pescatore is the only Caucasian employee who applied for the two positions posted on
March 20, 2013, and the promotion/hiring of the last two African-American head cashiers took
place after Wade's complaint of race discrimination.  Although Wade has not raised a strong case
of discrimination, she has raised a genuine issue of material fact sufficient to present her case to
the jury.

DISMISSED WITH PREJUDICE.[6]

### C.    Hostile Work Environment Claims

Wade also alleges that she has been subjected to a hostile work environment at Home Depot.[7]

"To establish a prima facie case of hostile work environment, a plaintiff must show: (1) that [s]he belongs to a protected group; (2) [s]he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known of the harassment, yet failed to take prompt remedial action." *Watkins v. Texas Dep't of Criminal Justice*, 269 Fed. App'x 457, 463 (5th Cir. 2008). If the harassment is allegedly committed by a supervisor with immediate or successive authority over the victim, the plaintiff need only satisfy the first four elements. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

Fifth Circuit precedent makes it clear that subjective belief of racial motivation cannot import racial animus into an individual's conduct and, without objective evidence, is insufficient to create a *prima facie* claim for hostile work environment under Title VII. *See, e.g.*, *Lyles v. Texas Alcohol Beverage Comm'n*, 379 Fed. App'x 380, 384 (5th Cir. 2010); *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 Fed. App'x 104, 107 (5th Cir. 2009); *Johnson v. TCB Constr. Co.*, 334 Fed. App'x 666, 671 (5th Cir. 2009); *Garza v. Laredo Indep. Sch. Dist.*, 309 Fed. App'x

---

[6]Even if the Court were to consider Wade's allegations as additional claims of discrimination, rather than as allegations of hostile work environment and retaliation, they fail to rise to the level of an adverse employment action to support a *prima facie* case of discrimination.

[7]Wade seems to conflate her retaliation claims with her hostile work environment claims, so the Court has considered all her allegations for purposes of summary judgment.

11

806, 809 (5th Cir. 2009); *Baker v. FedEx Ground Package Sys. Inc.*, 278 Fed. App'x 322, 329

(5th Cir. 2008); *Watkins*, 269 Fed. Appx. at 464; *Ellis v. Principi*, 246 Fed. App'x 867, 871 (5th

Cir. 2007); *Harris-Childs v. Medco Health Solutions, Inc.*, 169 Fed. App'x 913, 917 (5th Cir.

2006).

Additionally, "Title VII . . . is not a 'general civility code,' and 'simple teasing,' offhand

comments, and isolated incidents (unless extremely serious) will not amount to discriminatory

changes in the 'terms and conditions of employment.'" *White v. Gov't. Employees Ins. Co.*, 457

Fed. App'x 374, 380 (5th Cir. 2012) (quoting Lauderdale v. Tex. Dep't of Crim. Justice, 512

F.3d 157, 163 (5th Cir. 2007)).  "[F]or harassment to be actionable, it must be sufficiently severe

or pervasive to alter the conditions of the victim's employment and create an abusive working

environment." *Watkins*, 269 Fed. App'x at 464 (internal quotation marks omitted).  In

determining whether a workplace constitutes a hostile work environment, courts must consider

"the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the

employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

Wade cannot make out a *prima facie* case of harassment based on her allegations.  She is

a member of a protected class as an African-American, but she cannot show that her alleged

harassment was so severe or pervasive as to alter the terms or conditions of her employment or

that the alleged harassment was based on race.

First, the incidents that Wade alleges constitute harassment are either speculative, too

minor to be actionable, or both.  Wade's allegations are as follows:

(1)     Home Depot hosted a "Road to Recovery" party to thank employees for
        assisting with loss prevention issues, but failed to give her a gift card that

12

night for assistance, even though other employees got gift cards.  Wade was told by Woods and Assistant Store Manager Craig Lowe ("Lowe") that they did not have her gift card from a local nail salon because it was closed at the time.  She later received the gift card.

(2)     Whenever the Monroe store was scheduled to be visited by a District Manager or other executive or a pot luck lunch was planned, she alleges that she was scheduled off from work. However, Wade does not know if Woods made out the schedule.

(3)     Wade alleges that one week a month, her schedule would be shifted from 40 to 37.5 hours in a work week.  However, she also admits that a full-time employee at Home Depot works between 32-40 hours per week and that she voluntarily gives away shifts to part-time co-employees who need extra hours.

(4)     Wade planned to have surgery in December 2014 and needed $3,000.  She asked Woods about Home Depot's program providing monetary grants to employees in need.  She alleges that Woods did not act quickly enough.  It was later determined that she was not eligible for a grant.

(5)     Although Wade was ineligible for a grant, the Home Depot did have a program where it would double the donations collected from her fellow employees.  Woods led the fund raising efforts at the Monroe store.  Employees donated approximately $686.00, and Home Depot, per its program, donated approximately $1,200.00.  However, Wade alleges Woods told her that employees had donated $1,000.00 and stopped the collections early.

(6)     Wade alleges that Woods and another Home Depot associate would purchase items through her cash register.  She speculates, without supporting evidence, that they then submitted negative "Voice of Customer" surveys online about her.

(7)     When Wade asked Lebeouf if the store planned to hire a new full-time head cashier, she claims he laughed and told her he would need to check with Woods.

(8)     At some point before Woods was store manager, Wade's husband was diagnosed with brain cancer.  She asked a human resources employee, Charles Mock ("Mock"), for assistance in submitting a grant request, but claims that he "hollered" at her that all he could do was print the

paperwork.[8]

(9)     Wade alleges that she told Lowe that a fellow employee was smoking in
        the garden center of the store and afterwards the employee stopped
        speaking to her and would come near her with a cigarette.  She assumes
        Lowe told the employee that she complained.

(10)    One night when she was working at the lumber cash register, she needed
        assistance from a lumber associate in cutting lumber for a customer, but
        was not able to get a lumber associate to assist her, despite trying for 20-25
        minutes.  Lowe never came to check on her because he was on break.

(11)    Wade requested that Woods convert some of her vacation hours to cash,
        and he told her this was against company policy, but another African-
        American employee had been allowed to do so.  Ultimately, Wade was
        allowed to convert some of her vacation hours to cash.

(12)    Wade requested and was approved to be off the day after Labor Day, but
        then was not given her paid vacation for Labor Day.  She was later paid for
        those hours.

(13)    When a pregnant pro desk cashier was moved to a regular cashier position
        because of her work restrictions, Wade was moved to that lateral position.
        However, the pro desk cashier, who is African-American, determined that
        she could still work at the pro desk cashier position, and Woods placed her
        back in her regular position on her request.

With regard to the gift card, grant, and donation incidents, the Court finds that none of

these incidents involve terms or conditions of employment.  No employee is entitled to the

receipt of a voluntary grant or gift, and, thus, she cannot make a *prima facie* case based on these

incidents.

Additionally, although Wade complains about the gift card, donations, and vacation pay,

she was actually given a gift card, $1,800 in donations, and the vacation pay which she requested

(both the vacation pay for Labor Day and the conversion of unused vacation to cash).

---

[8][Doc. No. 18-3, Wade Depo., p. 119].

14

With regard to her complaints about Lowe, Lebeouf, and Mock, none of their alleged actions or inactions rise to the level of severe or pervasive harassment, but at worst showed insensitivity and a lack of civility.

Wade has no evidence that Woods actually scheduled her to be off when executives were visiting or that he and other associates made negative comments about her in online surveys.

Finally, while scheduling and job transfers may constitute a change in the conditions of her employment, Wade's allegations in this case do not rise to the requisite level.  Even if her hours fluctuated by 2.5 hours one week per month, she admitted she was scheduled well within the amount of hours for full time employees.[9]  It is undisputed that the pro desk cashier and regular cashier positions are lateral, and her move to and from these positions did not affect a change in the terms and conditions of her employment.  The fact that Wade believed the pro desk cashier position to be more favorable is of no moment.  *See Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 n. 6 (10th Cir. 1998) ("If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer adverse employment action.").[10]

---

[9]When Wade complained to her supervisor, her supervisor said that she would speak to the "scheduler," and since that time Wade's schedule has been changed back to 40 hours each week. [Doc. No. 18-3, Wade Depo., p. 84].

[10]Transfer issues typically arise in the context of discrimination claims, and lateral transfers only constitute adverse employment action if the new position is objectively less favorable. *See McFall v. Gonzales*, 143 Fed. App'x 604 (5th Cir. 2005) (purely lateral transfers are not adverse employment actions, but a transfer which is objectively worse such that it is "equivalent to a demotion in form or substance" may be an adverse employment action). However, if a lateral transfer does not rise to the level of an adverse employment action, it cannot rise to the level of harassment either.  *See, e.g. McNealy v. Emerson Elec. Co.*, 121 Fed. App'x 29 (5th Cir. 2005) (lateral transfer was not an adverse employment action, and plaintiff raised no

In summary, none of the actions Wade alleges are sufficient, alone or combined to constitute a hostile work environment.

Moreover, Wade has produced no evidence, only speculation, that the alleged actions were based on race.  Wade admits that no one at Home Depot made racial comments to her.  She has likewise produced no other evidence to suggest that her alleged harassment was based on race.  At least with regard to Woods, she apparently admits that he engaged in favoritism, not racism, stating that "[e]verybody say the same thing, I don't care if they black or white, if they not part of the Jeff crowd they going to complain." [Doc. No. 18, Exh. A, p. 90].[11]  *See Reine v. Honeywell Intern., Inc.*, 362 Fed. App'x 395, 397 (5th Cir. 2010) (There is no hostile work environment based on an "'equal opportunity' harasser.") (citing *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270-71 (5th Cir. 1998)).

Thus, Home Depot's Motion for Summary Judgment on Wade's hostile work environment claim is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

### D.    Age Discrimination Claims

Wade also asserts a claim of age discrimination under the ADEA.  However, the ADEA provides that a "civil action may [not] be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]."  29 U.S.C. § 626(d).  Thus, a plaintiff "seeking relief under the ADEA must first file an administrative charge with the EEOC."  *Julian v. City of Houston, Tex.*, 314 F.3d 721, 726 (5th Cir. 2002).

---

other allegations to support a hostile work environment claim).  In this case, there is nothing about the alleged facts to show that Wade's temporary transfer to and subsequent transfer back from the pro desk cashier position would meet her required showing.

[11]Wade also testified that "[i]f you in Jeff's arena, you can move up just like that, but if you not part of the Amen crowd for Jeff, no." [Doc. No. 18-3, Wade Depo., p. 66].

"The administrative-exhaustion requirement is also considered met for any other claims within 'the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Walton-Lentz v. Innophos, Inc.*, 476 Fed. App'x 566, 569 (5th Cir. 2012) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (internal quotation marks omitted)). "This rule swerves 'to trigger the investigatory and conciliatory procedures of the EEOC' without keeping unsophisticated complainants out of court on technicalities." *Id.* (quoting 448 F.3d at 788-89)).

In this case, Wade filed an EEOC charge. However, it is undisputed that she failed to allege age discrimination in the factual statement contained in the charge or any communication with the EEOC. Her claims of age discrimination could not reasonably be expected to grow out of a charge which was limited to charges of race discrimination. Accordingly, Wade has not exhausted her administrative remedies under the ADEA. Home Depot's Motion for Summary Judgment on her ADEA claims is GRANTED, and these claims are DISMISSED WITH PREJUDICE.[12]

### E.    Retaliation Claims

Title VII prohibits an employer from discriminating against an employee because she has opposed an employment practice that is unlawful under Title VII or testified in an investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a).

Wade's retaliation claim, like her race discrimination claim, is analyzed under the *McDonnell-Douglas* burden-shifting framework. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). To establish a *prima facie* case of unlawful retaliation, a plaintiff must

---

[12]Consistent with her failure to allege age discrimination in her EEOC charge, Wade testified in her deposition that she believed that she had been discriminated against on the basis of race alone. [Doc. No. 18-3, p. 73].

17

show: (1) that she engaged in protected activity; (2) that she was subjected to a materially

adverse employment action; and (3) that there is a causal connection between the protected

activity and the materially adverse employment action.  *See Burlington N. & Santa Fe Ry. v.*

*White*, 548 U.S. 53, 68 (2006).  With regard to the second prong, the Supreme Court and the

Fifth Circuit have provided guidance:

> To demonstrate that a retaliatory action was "materially adverse," [the plaintiff]
> must show that the action "might have dissuaded a reasonable worker from
> making or supporting a charge of discrimination." *Burlington* . . . , 548 U.S. . . . at
> 68 . . . (internal quotation marks and citation omitted). The materiality standard is
> intended "'to separate significant from trivial harms' and 'filter out complaints
> attacking the ordinary tribulations of the workplace, such as the sporadic use of
> abusive language, gender-related jokes, and occasional teasing.'" *Stewart [v. Miss.*
> *Transp. Comm'n*, 586 F.3d [321,] 327 [(5th Cir. 2009) (quoting *Burlington*, 548
> U.S. at 68)]. Even if the employer took an adverse action with the intent to
> retaliate against the employee, the adverse action must satisfy the materiality
> requirement to be actionable.  *Id.* Whether an alleged act of retaliation is material
> depends upon the particular circumstances. *Burlington*, 548 U.S. at 69 . . . .

*Magiera v. City of Dallas*, 389 Fed. App'x 433, 437 (5th Cir. 2010).

 If the plaintiff makes out a *prima facie* case of retaliation, the burden shifts to the

defendant-employer to articulate a legitimate, non-retaliatory reason for the adverse employment

action. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). If the employer

satisfies its burden, the plaintiff must prove that the proffered reason is pretext for retaliation,

that is that the employer would not have taken action against her "but for" her protected activity.

*Id.*; *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).

The Court first finds that Wade has failed to establish a *prima facie* case of retaliation.

According to Wade's own testimony, she complained to the District Manager's secretary some

time in April 2013 about the failure to promote her to head cashier.  This complaint is arguably

protected activity.  Additionally, some of the actions about which she complained occurred after

the filing of her EEOC charge, which is clearly protected activity.

However, Wade has failed to point to any evidence that she was subjected to a materially adverse employment action.  Wade remains employed at Home Depot in the same position she previously held.  The actions about which she seems to base both her hostile work environment and retaliation claims simply do not rise to the level of materially adverse employment actions.

Further, to the extent that Wade alleges that she was denied a promotion in retaliation for her complaints, which would constitute a materially adverse employment action, she cannot establish a causal connection.  According to her own deposition, Pescatore had already been awarded the head cashier position at the time she complained to the District Manager's secretary in April 2013, although she was not actually placed in the position until June 2013.

One of the other two head cashier positions was filled prior to her complaint and by an external candidate, and the other position was filled the same month as her complaint.  Both of these other two positions were filled by African-Americans.  With regard to the position filled in April, one of two scenarios is possible: either it was already filled at the time of her complaint, or, even after complaining, Wade failed to apply for the job online.  In either event, Wade cannot establish a causal connection between her complaint and Home Depot's failure to promote her to head cashier.

Finally, since her complaint, Home Depot has promoted two additional African-American employees to head cashier, but there is no evidence that Wade applied for these positions.[13] Accordingly, Home Depot's Motion for Summary Judgment as to Wade's retaliation claim is also GRANTED.

---

[13]Wade does not allege that she was misled about or prevented from applying for these positions.

III.    **CONCLUSION**

For the foregoing reasons, Home Depot's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.  To the extent that Home Depot moves for summary judgment on Wade's claim of race discrimination based on the failure to promote, the motion is DENIED.  The motion is otherwise GRANTED, and Plaintiff Charmine Wade's remaining claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 5th day of January, 2016.


**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**

20